IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID R. MORENO,<br><br>    Petitioner,<br><br>  v.<br><br>JAMES A. YATES, Warden,<br><br>    Respondent.<br>_____/ | No. C 06-0759 WHA (PR)<br><br>**DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below the petition is **DENIED**.

### STATEMENT

Petitioner stabbed Hector Aguilar at a church where Aguilar lived in San Jose (Exh. 2 [opinion of California Court of Appeal] at 2-4).[1] A Santa Clara County jury convicted petitioner of assault with a deadly weapon, *see* Cal. Penal Code 245(a)(1)), and the jury found true an allegation that defendant had personally inflicted great bodily injury in the commission of the assault, *see id.* at 12022.7(a) (Exh. 2 at 1). The court found true allegations that defendant had suffered two prior serious felony convictions (*id.* at 4). *See* Cal. Penal Code

---

[1] All references to "Exh." are to the record lodged by the respondent.

667(a), (b)-(i), 1170.12. Defendant was committed to state prison to serve a term of twenty-five years to life consecutive to a determinate term of thirteen years (Exh. 2 at 1).

The following facts were set out by the court of appeal:

The stabbing occurred on the evening of April 1, 2002 at a church that served as a homeless shelter. Valerie Vallejos and her sister Frances Vallejos lived at the church, and Valerie was the shelter manager. [FN1. We refer to Frances and Valerie Vallejos by their first names for purposes of clarity and not out of disrespect.] Hector Aguilar also lived at the church. Frances had known Aguilar since she was a child, and they were both familiar with defendant. Aguilar knew defendant as "Ronnie" and knew that his mother was Helen Dominguez. Aguilar had seen defendant on the church premises on numerous occasions in the month preceding the stabbing and had seen defendant there on the morning of April 1, 2002. Frances was acquainted with defendant's family because she had grown up with his sister and had known his mother, Helen Dominguez, and his stepfather for a long time. She had seen defendant at the church a couple of times over a period of a few months prior to the stabbing and knew him by sight but not by name.
At about 8:20 p.m. on April 1, 2002, Frances and Aguilar were near the back of the church by a shed. Aguilar had consumed several alcoholic drinks that day and had stopped drinking about an hour earlier. He could feel the effects of the alcohol, but he was not drunk and was not so intoxicated that he could not think, walk or talk. Frances had also had a few beers that day between 4:00 p.m. and 6:30 p.m. She had also taken Haldol, Seroquel and Trazadone, which she had been prescribed for her depression.

Defendant and another man approached a gate attached to the church near the shed. Both Frances and Aguilar recognized defendant. His companion was a young man who did not come to the gate but instead "huddle[d] against a wall." [FN2. Aguilar had seen this second man with defendant before and believed that he was defendant's nephew. Defendant was 35 years old.] Defendant said "I want to come in." Frances was concerned because defendant looked like he was under the influence of PCP. She felt "dangerous vibes" and thought "something might happen." Valerie had told Frances that no one was to be on the church premises while under the influence of drugs and to fetch her if someone arrived in such a condition. Frances told defendant to wait while she fetched Valerie. Frances believed that the gate was locked, and she told Aguilar not to open the gate. Then she "ran" to fetch Valerie and defendant's mother, who were in a meeting inside the church. Frances hoped that defendant's mother would be able to "calm him down."

While Frances was gone, defendant and his companion came in through the gate. Defendant asked Aguilar if he was "Tony." Aguilar said no. Defendant accused Aguilar of "talking shit," and he began hitting Aguilar. Aguilar went into the church, and defendant followed him. Aguilar asked defendant "what do you want." Defendant took out a knife, and stabbed Aguilar in the stomach. Defendant's companion stood against a wall and watched. Defendant said "fucking sureno" and ran away. Just minutes after Aguilar was stabbed, defendant was seen fighting another man in front of the church with a knife in his hand.

Frances found Valerie and told her that "Ronnie" was at the back gate and appeared to be under the influence of drugs. Frances, Valerie and Helen Dominguez went to the back of the church. Frances had been gone just two or three minutes. They found Aguilar inside the church with a stab wound to his stomach. The gate was

2

open. Aguilar, who looked as if he was about to faint and had blood on him, told Frances that "Ronnie" had stabbed him. He told Valerie "the bald guy did it, Helen's son." [FN3. Valerie testified that defendant is Helen Dominguez's only bald son.] Valerie called 911.

While Aguilar was being treated by paramedics, a police officer asked Frances to translate for Aguilar, and Aguilar told the officer through Frances that "Ronnie" had stabbed him. Frances also told the police "Ronnie did it." Twenty minutes after the stabbing, the police showed Frances a photographic lineup, and she identified a photograph of defendant as showing the man who had come to the gate and asked to be let in. While he was in the hospital, the police showed Aguilar a photograph of defendant and asked him if this was the man who stabbed him. Aguilar confirmed that it was and said the man's name was "Ronnie." The stab wound lacerated Aguilar's liver and required surgery. Aguilar was hospitalized for two weeks.

Defendant was arrested several weeks later in Tuolumne County. He was charged by information with assault with a deadly weapon (Pen.Code, § 245, subd. (a)(1)), and it was alleged that he had personally inflicted great bodily injury in the commission of the assault (Pen.Code, § 12022.7, subd. (a)). The information also alleged that defendant had suffered two prior serious felony convictions (Pen.Code, §§ 667, subds.(a), (b)-(i), 1170.12). The prior conviction allegations were bifurcated, and defendant waived his right to a jury trial on those allegations.

The defense at trial was mistaken identity. The defense tried to establish that Aguilar was too intoxicated to recognize defendant at the time of the stabbing. Defendant's girlfriend testified that defendant was living with her in Modesto from February 2002 to April 2002. However, she conceded that he had visited his mother in San Jose a couple of times during that period and she did not remember the dates of those visits. She was unable to verify defendant's whereabouts at the time of the stabbing

(Exh. 2 at 1-4).

## DISCUSSION

**A.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.     ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) his confrontation and due

4

process rights were violated when the victim's hearsay evidence was admitted; (2) his confrontation and due process rights were violated when Vallerie Vallejos's hearsay evidence was admitted; (3) his confrontation and due process rights were violated by admission of evidence of Vallejos's reiteration of the victim's identification of petitioner; and (4) his right to present a defense was violated by exclusion of evidence of the victim's moral turpitude.

### 1. Hearsay Claims

Petitioner's first three claims are that his rights under the Confrontation and Due Process Clauses of the Constitution were violated by admission of out-of-court statements going to his identify as the person who stabbed the victim. The first issue challenges admission of the victim's statements to Frances and a police officer that petitioner stabbed him. The second issue goes to testimony by Valerie that when Frances came to fetch her, Frances said that petitioner had stabbed the victim. The third issue involves Valerie's testimony that when she and Frances went to the aid of the victim, he said that it was petitioner who stabbed him.

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. The federal confrontation right applies to the states through the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965).

The ultimate goal of the Confrontation Clause is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. *Crawford v. Washington*, 541 U.S. 36, 61 (2004). It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. *Id.* The Confrontation Clause applies to all "testimonial" statements. *Id.* at 50-51. "Testimony . . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (citations and quotation marks omitted); *see id.* ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."). The Confrontation Clause applies not only to in-court testimony but also to out-of-court statements introduced at trial, regardless of the admissibility of the statements under state laws of evidence. *Id.* at 50-51.

1    The California Court of Appeal described the statements here at issue: "Frances, Valerie
and a police officer were permitted to testify that Aguilar had identified defendant as the stabber
shortly after the stabbing.  Frances and Valerie testified that when they found Aguilar in the
back of the church bleeding and about to faint he told them that defendant had stabbed him.
Frances and the police officer testified that, less than half an hour later, while emergency
medical personnel were tending to Aguilar, he told the police officer through Frances that
defendant had stabbed him" (Exh. 2 at 5).

The declarants whose statements are at issue in all three of the hearsay issues – Valerie
and the victim – testified at trial (Exh. 2 at 5, 7).  That fact by itself negates any Confrontation
Clause claim.  *See Crawford*, 541 U.S. at 59 n.9 ("[W]e reiterate that, when the declarant
appears for cross-examination at trial, the Confrontation Clause places no constraints at all on
the use of his prior testimonial statements.").

In addition, the statements to Frances and Valerie, who are not government officers,
were not testimonial, and thus not subject to Confrontation Clause challenge at all.  *See Jensen
v. Pliler*, 439 F.3d 1086, 1089 (9th Cir. 2006) (statement to declarant's attorney not testimonial
because attorney not government official to whom statement was made with an eye towards
trial); *United States v. Cervantes-Flores*, 421 F.3d 825, 833-34 (9th Cir. 2005) (noting that
*Crawford*'s examples "all involve live out-of-court statements against a defendant elicited by a
government officer with a clear eye to prosecution."); *United States v. Manfre*, 368 F.3d 832,
838 n. 1 (8th Cir.2004) (holding that statements made by declarant to family members were not
"testimonial" because they were "not the kind of memorialized, judicial-process-created
evidence of which Crawford speaks").  The Confrontation Clause does not apply to statements
that are not testimonial, regardless of whether such statements are subject to state hearsay rules.
*See Whorton v. Bockting*, 549 U.S. 406, 420 (2007); *Moses v. Payne*, 555 F.3d 742, 754 (9th
Cir. 2009).  Plaintiff's claim that admission of the victim's statements to Frances and Valerie
violated his Confrontation Clause rights thus is without merit for this additional reason.

Petitioner also asserts in a conclusory manner that admission of the statements violated
his due process rights.  Although his presentation of this claim in his petition for review almost

certainly was insufficient to exhaust it, *see Gray v. Netherland*, 518 U.S. 152, 163 (1996) (a general appeal to a constitutional guarantee as broad as due process is not enough to present the substance of such a claim to a state court), a court may deny – as opposed to grant – a claim on the merits even if it is unexhausted, *see* 28 U.S.C. 2254(b)(2). When a state court's evidentiary ruling is challenged, as here, the due process inquiry is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). But only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). In this case there was a constitutionally permissible inference the jury could draw from the evidence – namely, that petitioner was the perpetrator – and because the victim and Frances testified and could be cross-examined, admission of the hearsay evidence could not have rendered the trial fundamentally unfair. There was no due process violation.

For the reasons discussed above, the rejections of this claim by the state appellate courts were not contrary to, or an unreasonable application of, clearly-established United States Supreme Court authority.

### 2. Limit on Impeachment

Petitioner's remaining issue is his contention that his confrontation rights were violated by the trial court's refusal to allow him to impeach the victim with a misdemeanor conviction for brandishing a knife.

> During in limine motions, the defense asked the court to permit it to use [victim] Aguilar's prior convictions to impeach him. Aguilar had suffered four felony convictions for selling marijuana. He had also suffered misdemeanor petty theft convictions in 1980, 1983, 1993, 1996 and 1998, a second degree burglary conviction in 1976 and a domestic violence conviction in 1990. The court ruled that all of these convictions could be used to impeach Aguilar except for the 1976 burglary conviction, which the court found was "too old."

> Defendant's trial counsel then told the court that "there was a misdemeanor brandishing [Penal Code section 417, subdivision (a) ] conviction that I think occurred in 1988 that I mentioned today" that "I would ask also that be admitted for the purposes of impeaching Mr. Aguilar's credibility." The court asked defendant's trial counsel for "authority that indicates that brandishing is a crime of moral turpitude," and the matter was deferred until counsel could provide authority for that proposition

7

(Exh. 2 at 7).

When the issue arose again at trial the court declined to allow impeachment with the misdemeanor brandishing conviction, saying that is was not a crime of moral turpitude and that admitting it would be more prejudicial than probative under California law (*id.* at 8).

The Confrontation Clause guarantees an opportunity for effective cross examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish. *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). A defendant meets his burden of showing a Confrontation Clause violation by showing that "[a] reasonable jury might have received a significantly different impression of [a witness'] credibility . . . had counsel been permitted to pursue his proposed line of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).

To determine whether a criminal defendant's Sixth Amendment right of confrontation has been violated by the exclusion of evidence on cross-examination, a court must inquire whether: "(1) the evidence was relevant; (2) there were other legitimate interests outweighing the defendant's interests in presenting the evidence; and (3) the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness." *United States v. Beardslee*, 197 F.3d 378, 383 (9th Cir. 1999) (citations omitted); *see, e.g., Plascencia v. Alameda*, 467 F.3d 1190, 1201 (9th Cir. 2006) (exclusion of cross-examination that would have provided cumulative or repetitive evidence did not violate Confrontation Clause or was harmless).

The evidence was relevant, but as the court of appeal said in rejecting the state law claim, "[s]ince the trial court had already ruled that Aguilar could be impeached with 11 convictions (including 5 felonies) for selling marijuana, petty theft and domestic violence that were far more probative on the issue of Aguilar's credibility than the brandishing conviction, the probative value of evidence of the brandishing was minimal" (Exh. 2 at 9-10). The state's interest in not wasting time on unnecessary and minimally probative evidence outweighed the defendant's interest in presenting it, and most conclusively, the jury possessed more than enough evidence with which to assess the credibility of the witness. Thus, applying the

*Breakslee* factors, there was not a confrontation clause violation, and for these same reasons there could have been no "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993) Id. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  That is, if there were an error, it was harmless.

The rejections of this claim by the state appellate courts were not contrary to, or an unreasonable application of, clearly-established United States Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  May   14  , 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\MORENO759.RUL.wpd